UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

In The Matter Of The            )
Extradition Of                  )        MAG No. 12-65m
Dylan Ryan Johnson              )

## OPINION AND ORDER

**MAUREEN P. KELLY, United States Magistrate Judge**

Dylan Ryan Johnson has filed a Response to Government's Motion to Detain and Mr. Johnson's Motion for Release on Bail ("Motion for Release on Bail") [ECF No. 27], seeking his release from custody, pending a final determination of a Formal Request for Extradition submitted by the government of Mexico. Mexico seeks Johnson's extradition pursuant to an arrest warrant issued on December 8, 2003, by the Judge of First Instance for Civil and Criminal Matters of the Judicial District of Comonfort, Guanajuato, for the rape and murder of a 16 year old boy. [ECF Nos. 1, 16]. Johnson argues that continued detention is not warranted because he is not a "flight risk," and is unnecessary, as demonstrated by Mexico's delay in seeking his extradition. Johnson also contends bail is available in Pennsylvania for his crimes, and therefore, bail should be granted. [ECF No. 34]. Johnson seeks an Order releasing him from detention pending a final determination of the extradition request and the anticipated filing of petitions for habeas corpus.

The United States opposes revocation of the detention order as inappropriate given the presumption against release in an extradition case and the absence of the requisite "special circumstances" to justify Johnson's release.

A hearing was conducted on August 3, 2012, relative to the Motion for Release on Bail. After consideration of the arguments presented by both parties, as well as the memoranda filed in support and in opposition to Johnson's motion, the Motion for Release on Bail is DENIED.

I.  DISCUSSION

   A. "Special circumstances" must exist to permit bail in extradition matters.

The presumption against bail in extradition matters was recognized nearly a century ago by the United States Supreme Court in Wright v. Henkel, 190 U.S. 40, 62-63 (1903), and arises from the strong governmental need to ensure that the United States fulfills its international treaty obligations to surrender fugitives to its treaty partners once they are found to be extraditable. Id. at 62. Nearly a century ago, Judge Learned Hand observed held that bail should be granted "only in the most pressing circumstances and when the requirements of justice are absolutely preemptory." In re Mitchell, 171 F. 289 (S.D.N.Y. 1909). This historical presumption against bail remains the rule today. See, e.g., Matter of Extradition of Russell, 805 F.2d 1215, 1216 (5th Cir. 1986); Ha Yau-Leung v. Soscia, 649 F.2d 914, 920 (2d Cir.), cert. denied, 454 U.S. 971 (1981); United States v. Williams, 611 F.2d 914, 915 (1st Cir.1979).

Johnson argues that the grant of bail during the pendency of an extradition matter is a matter of right pursuant to the liberty interest guaranteed to him under the Fifth Amendment of the United States Constitution. Citing Zadvydas v. Davis, 533 U.S. 678, 690 (2001), Johnson posits that his continued detention therefore requires "a sufficiently strong" "special justification [that] outweighs" his "constitutionally protected interest in avoiding physical restraint." [ECF No. 27, pp. 3-6]. In addition, Johnson contends that "special circumstances" such as severe illness or extreme youth are not required for the grant of bail in extradition matters, and that in

the absence of evidence of risk of flight, he should be released pending a final determination of extradition by the Secretary of State.

In support of his position, Johnson cites Beaulieu v. Hartigan, 430 F. Supp. 915 (D. Mass. 1977), a decision which was later vacated by the United States Court of Appeals for the First Circuit. As the Court of Appeals for the First Circuit determined, "[u]nlike the situation for domestic crimes, there is no presumption favoring bail [in extradition matters]. The reverse is rather the case." Beaulieu v. Hartigan, 554 F.2d 1, 2 (1st Cir.1977). On remand, the Court of Appeals ordered the district court to apply a "special circumstances" analysis to justify the grant of bail.

Johnson's status as a citizen of the United States does not alter this result in light of the paramount interest of the United States in delivering an accused to a treaty partner seeking extradition. See, Wright v. Henkel, at 40, 43; In re Extradition of Garcia, 615 F. Supp.2d 162, 168-169 (S.D.N.Y. 2009). In Garcia, the district court considered the fugitive's argument that as a citizen, he was entitled to bail under the Eighth Amendment of the United States Constitution. Noting that "[i]f this were a federal criminal case, the Court likely would have set bail conditions during the initial presentment that Garcia could have met," the court required Garcia, notwithstanding his United States' citizenship, to show "special circumstances" justifying the "risk of national political embarrassment that might result if he were released on bail and thereafter absconded." Id.

> Because this is not a domestic case, the Eighth Amendment is not the only relevant authority. Rather, under the Supremacy Clause of the United States Constitution, the Court also must consider the Treaty. See U.S. Const. art. IV, cl. 2 ("This Constitution ... and all Treaties made ... under the Authority of the United States, shall be the supreme Law of the Land"); Mora v. New York, 524 F.3d 183, 192-93 (2d Cir. 2008) (Supremacy Clause places treaty provisions "in the same category as other law of [C]ongress"). It follows that the Eighth Amendment's admonition concerning the need to set reasonable bail in criminal cases cannot

3

trump the Treaty. The Court therefore has the obligation to grant bail only when special circumstances exist-even where, as here, the relator is a United States citizen.

In re Extradition of Garcia, 615 F. Supp. 2d 162, 168-69 (S.D.N.Y. 2009).

Johnson also cites Zadvydas v. Davis, 533 U.S. 678, 690 (2001), in support of his contention that he is entitled to be released on bail during the pendency of judicial consideration of the Formal Request for Extradition, absent proof by the United States of "special circumstances" requiring detention. However, given the criminal nature of the underlying proceeding and the procedural protections afforded Johnson, reliance upon Zadvydas is not appropriate.

Zadvydas raised the constitutional ramifications of indefinite and potentially permanent civil detention where petitioners have been ordered deportable, but no country was willing to accept them. The United States Supreme Court found that potentially permanent civil confinement, without a process to determine the likelihood of repatriation or the propriety of supervised release pending deportation, violated the Constitution.

> A statute permitting indefinite detention of an alien would raise a serious constitutional problem. The Fifth Amendment's Due Process Clause forbids the Government to "depriv[e]" any "person ... of ... liberty ... without due process of law." Freedom from imprisonment-from government custody, detention, or other forms of physical restraint-lies at the heart of the liberty that Clause protects. See Foucha v. Louisiana, 504 U.S. 71, 80, 112 S. Ct. 1780, 118 L.Ed.2d 437 (1992). And this Court has said that government detention violates that Clause unless the detention is ordered in a criminal proceeding with adequate procedural protections, see United States v. Salerno, 481 U.S. 739, 746, 107 S. Ct. 2095, 95 L.Ed.2d 697 (1987), or, in certain special and "narrow" nonpunitive "circumstances," Foucha, supra, at 80, 112 S. Ct. 1780, where a special justification, such as harm-threatening mental illness, outweighs the "individual's constitutionally protected interest in avoiding physical restraint." Kansas v. Hendricks, 521 U.S. 346, 356, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997).
>
> The proceedings at issue here are civil, not criminal, and we assume that they are nonpunitive in purpose and effect. There is no sufficiently strong special

> justification here for indefinite civil detention-at least as administered under this statute.

Zadvydas v. Davis, 533 U.S. 678, 690 (2001). The Supreme Court held that the applicable deportation statute contained an implicit six month time limit authorizing detention pending repatriation. After the expiration of six months, the Supreme Court determined that an alien must be permitted to show that there is no significant likelihood of removal to another country in the foreseeable future, shifting the burden to the Government to respond with evidence sufficient to rebut that showing. Id. at 701. If the Government is able to establish the likelihood of removal in the reasonably foreseeable future, then continued confinement is permitted. In the case at issue, the extradition of Mr. Johnson does not raise these concerns.

First, there is no possibility of indefinite or permanent detention without a hearing. The applicable extradition statute provides that once a final judicial order is entered certifying that a fugitive is extraditable, the Government must convey the prisoner to the foreign government within two calendar months. If conveyance does not occur within two calendar months, the fugitive is then permitted to seek discharge from custody. 18 U.S.C. § 3188. The two-month calculation runs from the time any appeals or petitions for habeas corpus filed by the fugitive are finally adjudicated, not from the date of original commitment. Jimenez v. U.S. Dist. Court for the Southern Dist. of Fla., Miami Div., 84 S. Ct. 14 (1963)(delay attributable to legal proceedings initiated by petitioner is not included in calculation of two month time limit); Eichelberger v. Warden Metropolitan Detention Center, 2006 WL 2040128 (E.D.N.Y. 2006)(same). Thus, pre-extradition detention is finite and upon the entry of a final order certifying Johnson as extraditable, Johnson may apply for release from custody if he is not delivered to the Mexican authorities within two months. Because an explicit statutory process exists to forestall the unlikely possibility of indefinite detention, the Zadvydas procedural

5

concerns are not present, and the long-standing presumption against bail in the absence of "special circumstances" governs the disposition of Johnson's motion.

Second, to the extent Johnson's argument is predicated upon the length of his prehearing detention as justification for release from detention, Johnson's counsel expressly consented to the initial rescheduling of the extradition hearing to take place on April 24, 2012, so as to allow newly appointed counsel sufficient time for preparation. [ECF No. 21]. The Court subsequently granted an unopposed motion by the Government to reschedule the hearing at a later date to accommodate the temporary assignment of the Assistant United States Attorney as well as two further extensions of time to respond to Johnson's Motion to Revoke Order of Detention. [ECF Nos. 22, 28, and 29]. Due to scheduling constraints, the hearing of this matter was rescheduled for the earliest possible date, August 3, 2012, and Johnson's counsel expressly consented to this additional extension.

**B. Johnson has not presented any "special circumstances" supporting release during the pendency of extradition proceedings**.

Johnson asserts that several "special circumstances" warrant his release from detention. Johnson contends that Mexico's delay in pursuing a Formal Request for Extradition and the delays attendant with the course of litigating an extradition request combine to create sufficient hardship to warrant his release. In addition, Johnson contends that his need to obtain criminal defense counsel in Mexico, his age at the time the crime was committed, and the absence of evidence that he is a flight risk further support his Motion for Release on Bail.

Special circumstances are typically limited to those situations where the justification for release is pressing as well as plain. Wright v. Henkel, 190 U.S. at 62; United States v. Kin–Hong, 83 F.3d 523, 524 (1st Cir.1996) (per curium). Special circumstances may include a delayed extradition hearing, United States v. Williams, 611 F.2d 914, 915 (1st Cir.1979); the

raising of substantial claims against extradition on which the petitioner has a high probability of success; a serious deterioration in the relator's health; or an unusual delay in the appeals process, Salerno v. United States, 878 F.2d 317, 317 (9th Cir.1989); In re Extradition of Siegmund, 887 F.Supp. 1383, 1385–86 (D.Nev.1995); United States v. Taitz, 130 F.R.D. 442, 444–45 (S.D. Cal.1990). However, where the pre-hearing delay is consented to, it cannot be relied upon as a "special circumstance." Hababou v. Albright, 82 F. Supp.2d 347, 351 (D. N.J. 2000). Similarly, the fact that there has been a long delay between the commission of the crime and the Formal Request for Extradition does not constitute a "special circumstance," but is a factor to be considered with the nature of the underlying crime, the risk of flight, and the interests of the countries in extradition to determine the propriety of continued detention. U.S. v. Leitner, 784 F.2d 159, 161 (2d Cir. 1986).

In, Lietner, the United States Court of Appeals for the Second Circuit noted that the treaty parties moved slowly in making an arrest, despite the fact that the fugitive was driving a taxi, attending law school in his own name and visiting his parents every weekend. However, the violent nature of the crime and the fact that the fugitive had fled the requesting country weighed strongly against bail.

Johnson has been accused of murdering and raping a 16 year old boy, fleeing Mexico, and leaving behind, and unclaimed, a recently built home, his pickup truck and all other possessions, including copies of his passport and his Ohio driver's license. As in Leitner, the nature of the crime and the circumstances of his immediate flight from the jurisdiction weigh strongly against bail. The slow progress of his prosecution by Mexico, while troubling, does not vitiate the interest of both treaty parties to ensure his delivery to Mexico for trial.

7

Johnson also contends that his continued detention will hamper his ability to meaningfully participate in his defense and to acquire Mexican criminal counsel. Neither factor constitutes a "special circumstance" to warrant release. Hababou v. Albright, 82 F. Supp.2d at 351-352. Johnson notes that his wife and family are providing continued emotional support and would be willing to house him should the Court grant his motion. However, there is no evidence that his wife or family are unwilling or unable to retain or contact prospective Mexican counsel on Johnson's behalf.

Johnson also contends that the availability of bail in Pennsylvania or Mexico qualifies as a special circumstance justifying bail. For this proposition, he cites Article I, § 14 of the Pennsylvania Constitution, as amended in 1998, which clearly would preclude bail in this case. "All prisoners shall be bailable by sufficient sureties, *unless for capital offenses or for offenses for which the maximum sentence is life imprisonment* or unless no condition or combination of conditions other than imprisonment will reasonably assure the safety of any person and the community *when the proof is evident or presumption great*…." [ECF No. 34, p. 3](italics added). The United States responds to Johnson's argument citing Diplomatic Note 05334, properly certified from the Embassy of Mexico to the United States Department of State. The Diplomatic Note indicates that because of the serious crimes for which Johnson stands accused, bail would not be available in Guanajuato, Mexico. [ECF No. 35, p. 2; Exhibit 1]. In addition, the offenses for which Johnson has been charged are, under both Pennsylvania and comparable federal law, capital offenses or offenses for which the maximum punishment is death or life imprisonment. See, 18 U.S.C.A. § 1111 (a), 18 Pa.C.S.A. § 1102(b). Thus, bail is not available pursuant to Article 1, Section 14 of the Pennsylvania Constitution, where the evidence at the bail or bond hearing also indicates that the safety of the community or the risk of flight requires detention.

As indicated in the Pretrial Services Report, Johnson has only resided in Western Pennsylvania for five years. He has also resided in Ohio, West Virginia and Kentucky. He is self-employed in an internet based venture, reselling items on eBay®, a business which does not require his presence in Western Pennsylvania or any particular location in the United States. He has a history of substance abuse and an anxiety disorder, for which he has been prescribed medication on and off for the past 15 years. The serious nature of the charges at issue and his apparent flight from Mexico, leaving behind most material possessions, raise serious doubts as to Mr. Johnson's willingness to comply with an extradition Order. In addition, Johnson is charged with a crime of violence and is facing a substantial amount of time in the Mexican prison system, further increasing his risk of flight. These facts, coupled with the absence of any "special circumstances" warranting release from detention therefore weigh heavily in favor of Johnson's continued detention throughout the pendency of the Formal Request for Extradition.

## IV. CONCLUSION

Having considered the arguments of both parties, submitted legal memoranda, and applicable case law and statutes, for the reasons set forth herein, the Motion for Release on Bail is DENIED.

/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

Dated: September 7, 2012

cc: All counsel of record by Notice of Electronic Filing